**UNITED STATES of America, Appellee,**

v.

**Marion KNUCKLES, Rose Smith and Raymond Brown, Appellants.**

**Nos. 582, 690 and 821, Dockets 77–1402, 77–1460 and 77–1426.**

United States Court of Appeals, Second Circuit.

Argued May 2, 1978.

Decided June 30, 1978.

---

Jay Goldberg, New York City, for appellant Knuckles.

Michael S. Washor, Brooklyn, N. Y., for appellant Smith.

Martin E. Gotkin, New York City, for appellant Brown.

Scott G. Campbell, Asst. U. S. Atty., S. D. N. Y., New York City (Robert B. Fiske, Jr., U. S. Atty., Allan Levine and Robert J. Jossen, Asst. U. S. Attys., S. D. N. Y., New York City, of counsel), for appellee.

Before MOORE, OAKES and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

Marion Knuckles, Raymond Brown, and Rose Smith appeal from judgments of conviction entered after a jury trial in the Southern District of New York. The indictment charged Knuckles, Brown, and Smith, as well as Yolanda Simpson,[1] with two counts of violating the federal narcotics laws. Count One charged the defendants with conspiracy to distribute and to possess with intent to distribute Schedule I and Schedule II controlled substances, in violation of 21 U.S.C. § 846.[2] Count One alleged various overt acts in furtherance of the conspiracy, including a delivery of heroin by Knuckles to Simpson in October 1976, and the processing and packaging of heroin in October 1976. Count Two charged the defendants with distribution of heroin and possession with intent to distribute heroin on or about October 1, 1976, in violation of 21 U.S.C. § 841(a)(1).[3] Simpson pleaded guilty to Count One, and appeared as a

---

1. The indictment also named a fifth conspirator, Jane Doe, a/k/a "Gwen," later identified as Gwendolyn Owen. Owen's case was severed from the others, and she pleaded guilty to a superseding information.

2. Section 846 of 21 U.S.C. provides:

"Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the

commission of which was the object of the attempt or conspiracy."

Count One charged a conspiracy to violate 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), see footnote 3 infra.

3. Sections 841(a)(1) and 841(b)(1)(A) provide:

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

"(1) to manufacture, distribute, or dispense, or possess with intent to manufacture,

witness for the Government. The jury convicted Knuckles and Brown on both counts, and Smith on Count One.[4]

## I

### THE CLAIM OF VARIANCE

Simpson, the Government's principal witness, testified that on several occasions she and the defendants had processed and packaged heroin for distribution. Her testimony related particularly to two nights in the summer and autumn of 1976 when Simpson and the defendants met at two different locations to process and package several thousand bags of what Simpson testified was heroin. Counsel for Knuckles, in cross-examining Simpson, brought out that some of the participants in the processing and packaging operation had brought cocaine to Simpson's apartment and had used it on the night of the second packaging operation, which took place sometime around October 1, 1976. Counsel for Smith, in his cross-examination of the Drug Enforcement Agency officer who seized narcotics paraphernalia from Simpson's apartment on April 19, 1977, developed that some of the utensils seized showed cocaine traces.[5]

At the close of the Government's case, the defendants made motions for acquittal on the ground that the substance involved in the defendants' activities was cocaine, not heroin. Later, in the conference on requests to charge, the defense counsel urged that though the indictment alleged a conspiracy related to heroin, and distribution and possession with intent to distribute heroin, the jury could conclude from the evidence in the case that the actions of the defendants were related to cocaine rather than heroin, and that there was therefore a substantial variance. After the court pointed out that the conspiracy count referred to "Schedule I and II narcotic drug controlled substances," which included both heroin and cocaine, defense counsel limited their variance argument to the substantive count, Count Two. The Government's attorney argued that there was too little evidence of cocaine to make this a serious issue, but that even if there were some grounds for supposing that cocaine rather than heroin was involved, the resulting variance between the indictment and the proof would be immaterial. The district court, persuaded by the Government's latter argument, charged the jury that they could convict on either count if they were convinced beyond a reasonable doubt that the substance involved was either heroin or cocaine.[6] No objection was made to the

---

distribute, or dispense, a controlled substance;

\*   \*   \*   \*   \*   \*

"(b) Except as otherwise provided in section 845 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

"(1)(A) In the case of a controlled substance in schedule I or II which is a narcotic drug, such person shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both. If any person commits such a violation after one or more prior convictions of him for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than 30 years, a fine of not more than $50,000, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of

such a prior conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a special parole term of at least 6 years in addition to such term of imprisonment."

4. Knuckles was sentenced to consecutive terms of eight years' and four years' imprisonment on Counts One and Two respectively, and special parole of ten years. Brown was sentenced to consecutive terms of eight years and one year, and six years of special parole. Smith received a sentence of imprisonment for five years, and special parole for six years.

5. Simpson's husband later testified that he found the utensils in the apartment when he returned to the apartment the morning after the second packaging operation, and that he had washed them.

6. The trial judge instructed the jury as follows:
   "I charge you as a matter of law that both heroin and cocaine are narcotic controlled drugs. That leads me to a particular instruction which I must give you.

charge on the ground of insufficient evidence that the substance was cocaine.

On appeal, the defendants now contend that there was insufficient evidence that the substance was cocaine to sustain the convictions. They contend also that the district court violated the defendants' Fifth Amendment right by amending the indictment to allow conviction for conspiracy to possess and distribute *cocaine* and for possession with intent to distribute, and distribution of, *cocaine*, though the indictment charges that the substance was *heroin*.

The defense brought the issue of cocaine into the case through the cross-examination of several Government witnesses. There was little evidence of cocaine, and had the Government's case rested only on this evidence, a dismissal would have been appropriate. But the Government's case in chief was directed to proof of dealings in heroin, and the defendants directed their motion for acquittal to the insufficiency of the evidence to prove possession of *heroin*;[7] the district court properly denied their motion.

In the conference on instructions to the jury, however, the defense argued that the evidence that the substance might have been cocaine was enough to raise the variance issue. Indeed, they emphasized that the jury could find that the substance involved in the case was cocaine. The defense urged that this was a prejudicial variance between the indictment and the proof, and required dismissal of the case.

■ An argument that there is a substantial variance assumes that there is sufficient evidence to establish a different offense from the offense charged. If the defendant believes that such evidence is not enough to allow the offense different from the offense charged to go to the jury there is, by definition, no variance.

The variance argument raised by the defense accordingly had to acknowledge implicitly that there was sufficient evidence from which the jury could conclude that the substance involved in the conspiracy and in the substantive count was cocaine. When the district court accepted that premise, but concluded to treat the variance as immaterial, the defense quite logically made no objection based on the insufficiency of the proof of cocaine, for that was the cornerstone of their defense of variance.

The defendants now seek reversal on a tortuous line of reasoning. They now urge

"There have been suggestions in this case that the particular substance which forms a part of the transactions and activities alleged in the indictment constituted cocaine and not heroin. I charge you that the statute under which this indictment is brought prohibits the distribution or possession with intent to distribute of certain controlled narcotic substances. And the conspiracy count in this indictment refers to the same underlying statute.

"I charge you that both heroin and cocaine are controlled narcotic substances within the statute, and I charge you further that if you find that the Government has proved beyond a reasonable doubt each of the elements necessary to constitute a conspiracy as I have just given it to you [if] you find that each of those elements has been established beyond a reasonable doubt, then if you further find that the substance was not heroin but was cocaine, that particular fact is of no legal significance, and that is because the statute prohibits the distribution or possession with intent to distribute of either substance. That is equally true, I charge you, with respect to the substantive count.

"If you find that each of the necessary elements in the substantive count have [sic] been proved by the government beyond a reasonable doubt, as I have defined that term to you, then if you make the additional finding that the substance in question was not heroin but was cocaine, that is of no legal significance.

"In saying that to you, I am not suggesting for a moment whether you should find that the elements have [sic] been established or whether you should find that the substance in question was heroin or cocaine or any other substance. Those facts questions are entirely for you to decide. I am simply instructing you as a matter of law that if the elements are established it would make no difference if you make the further finding that the substance was not heroin but was cocaine."

7. Two of the defense counsel argued that the strength of the cocaine evidence emphasized the weakness of the heroin evidence, a contention at odds with their present contention that the cocaine evidence was insufficient.

that the judge committed reversible error by charging that the jury could find the defendants guilty if the defendants possessed cocaine rather than heroin, upon the asserted ground that the evidence that the substance was cocaine was insufficient to go to the jury. From this they deduce that since no one can say that the jury did not acquit the defendants on heroin and convict them only on cocaine, the verdict may not stand.

There are several answers. First, as we have noted, the very motion to dismiss on the ground of variance assumed a prima facie case on cocaine, for otherwise the motion would have been transparently frivolous. Second, the defendants having accepted the position that there was a prima facie case on cocaine cannot, on appeal, shift their position. Third, we believe that, though in the light of the meager evidence of cocaine the Government should not have pressed the court to make the charge in the alternative, no serious harm was done, in any event, under the teaching of *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

■■■ The defendants, having adopted their position on the cocaine proof in the district court, cannot assert for the first time on appeal that there was insufficient evidence of cocaine to support a verdict on either count. The reliance of the trial judge on the assistance of counsel in shaping the issues to be decided by the jury does not permit us to countenance such a flagrant shifting of position on appeal. The rules requiring timely filing of pretrial defenses and objections, timely motions for acquittal because of insufficient evidence, timely objections to the jury charge, and providing for filing by the parties of requests for jury instructions (Fed.R.Crim.P. 12, 29, 30) are grounded in the need to fix the legal outlines of the case in the trial court. Counsel may not adopt one view of the proof in the trial court, thereby limiting the legal issues, and then adopt a different view of the evidence in order to raise other issues on appeal. In *United States v. Braunig*, 553 F.2d 777, 780 (2d Cir.), *cert. denied*,

431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 277 (1977), we said:

"Rule 12(f) F.R.Crim.Pro. makes clear that '[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial, . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.' The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, *United States v. Schwartz*, 535 F.2d 160, 163 (2d Cir. 1976), and where that party has had ample opportunity to make the point in the trial court in a timely manner, *United States v. Rollins*, 522 F.2d 160, 165 (2d Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 325[324] (1976), waiver will bar raising the issue on appeal."

When the defendant not only fails to move for acquittal on the ground of insufficiency of the evidence but also adopts a position that presupposes sufficiency, the issue of sufficiency cannot be raised on appeal.

In this case, we have no doubt that had the defense maintained throughout that the cocaine evidence was insufficient for conviction under either Count One or Two, it could have sought and secured appropriate jury instructions from the trial court to that effect. But that would not have been part of the game plan. As the defense concedes, the case was tried as a heroin case, and the defense could have obtained an instruction that there was insufficient evidence to support a conclusion by the jury that the substance was cocaine.

On the other hand, if we should assume, contrary to appellants' present position, that there was sufficient evidence of cocaine to support convictions on the conspiracy and substantive counts of the indictment, we would have to consider whether the trial court's charge to the jury resulted in an informal but impermissible amendment of the indictment.

■■■ Counsel for defendant Smith conceded at the conference on jury instructions that the *conspiracy* count was immune from

attack on the ground of variance, and the other defense counsel apparently acquiesced in that concession. In any event, Count One charged a conspiracy with respect to *both* Schedule I and Schedule II drugs, encompassing both heroin and cocaine. Though the indictment does charge a heroin-related overt act in furtherance of the conspiracy, proof of this conspiracy did not require proof of that particular overt act. Section 846 of Title 21 does not require proof of any overt act. *United States v. Bermudez*, 526 F.2d 89, 94 (2d Cir. 1975), *cert. denied*, 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). The conspiracy count alleged a scheme among the defendants to distribute Schedule I and II controlled substances, and proof of either a cocaine-related or a heroin-related overt act was sufficient for conviction, as was proof of no overt act at all.

■ However, if we assume that there was sufficient evidence of cocaine to support a conviction, the conviction on Count Two, the substantive count, would raise a different issue. Count Two charged distribution of and possession with intent to distribute *heroin*. The question would be whether allowing the jury to convict if they found the substance to be cocaine rather than heroin was an impermissible amendment of the indictment.

In *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the Court said:

> "The true inquiry . . . is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against

him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense."

295 U.S. at 82, 55 S.Ct. at 630, 79 L.Ed. at 1318.

The defendants in the case at bar were sufficiently apprised of the charges laid against them in Count Two of the indictment. It was the defense, not the prosecution, which introduced the evidence of cocaine during their cross-examination of Government witnesses. The Government's case related to a heroin processing and packaging operation only in the late summer and early autumn of 1976.[8] Further, the *only* variance alleged by the appellants is the exact nature of the substance involved, heroin or cocaine; the time, place, people, and object proved at trial are in all respects those alleged in Count Two of the indictment. Whether the substance was cocaine or heroin makes no difference under 21 U.S.C. § 841, the statute cited in Count Two of the indictment. Such a variance, affecting neither the Government's case nor the sentence imposed,[9] cannot have prejudiced the ability of the defendants to make their defense to the charge that they violated 21 U.S.C. § 841. *United States v. Garguilo*, 554 F.2d 59, 63 (2d Cir. 1977) ("A material variance occurs only if 'the prosecutor has attempted to rely at the trial upon theories and evidence that were not "fairly embraced in the charges made in the indictment." ' "); *see, e. g., United States v. Marshall*, 153 U.S.App.D.C. 83, 471 F.2d 1051 (1972). Nor is there any chance of a second prosecution for the same offense. Count Two names the defendants, the date and place of the crime, and the crime alleged. Read in conjunction with the charge to the jury, there can be no doubt that the

8. In most cases in which the issue of variance is raised, the claim is that the prosecutor has introduced evidence varying the indictment. Here the allegedly variant evidence *was* elicited by appellants. But whatever the source of the evidence, it is the charge to the jury that is decisive. The fact that the cocaine evidence came in here as an attempt to construct a

defense of variance is not significant, since after the evidence was received, the court did charge the jury that it could convict the defendants on the cocaine evidence.

9. *See* note 3 *supra.* Heroin is a Schedule I substance, and cocaine is a Schedule II substance.

defendants have been once in jeopardy for participation in a heroin or cocaine operation in the Southern District of New York in or around October 1976. *See, e. g., Epps v. United States,* 81 U.S.App.D.C. 244, 245, 157 F.2d 11, 12 (1946).

Appellant relies upon *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252, 256–57 (1960), for a rule that a defendant cannot be tried on charges not made in the indictment. Stirone was charged in the indictment with a violation of the Hobbs Act, 18 U.S.C. § 1951, by interference with interstate shipments of sand *into* Pennsylvania. The trial court also allowed proof of interference with shipments of steel *from* Pennsylvania into other states, and charged the jury that it could convict if it found that Stirone had interfered with either the sand or the steel shipments. The Supreme Court reversed Stirone's conviction, reasoning that the courts could not presume to know that the grand jury would have also indicted Stirone for the interference with the steel shipments.

The essence of the problem in *Stirone* was that an element of the Hobbs Act violation, necessary to make out a federal crime, was interference with interstate commerce. The jury charge, which allowed a conviction on a set of facts wholly unrelated to the facts charged, led the Court to conclude that the grand jury might not have agreed that the uncharged set of facts constituted a sufficient interference with interstate commerce for a Hobbs Act violation to have occurred.[10]

■ We agree with the Court of Appeals for the District of Columbia that convictions are not now set aside except for variance resulting in substantial prejudice to the defendant. And we accept Judge Leventhal's distinction of *Stirone* as applicable here. He noted that "[i]n *Stirone* the prosecution was relying at trial on a complex of facts distinctly different from that which the grand jury set forth in the indictment.

. . . In the case before us, there is a single set of facts . . . ." *Jackson v. United States,* 123 U.S.App.D.C. 276, 279, 359 F.2d 260, 263, *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966). *See also* Judge Lumbard's distinction of *Stirone* in *United States v. Garguilo, supra,* 554 F.2d at 63 n.2.

The single set of facts involved here was a tabling operation for a controlled substance at a particular time and place. The operative facts were the same whether the controlled substance was heroin or cocaine. We conclude that the variance was not substantial even if we were to assume that there was sufficient evidence that the substance possessed was cocaine.

## II

## INTRODUCTION OF SMITH'S POST–ARREST STATEMENT

The Government introduced into evidence a redacted version of Smith's post-arrest statement. The statement was:

"A. I went to the table with other persons and Yogi at 626 Riverside Drive apartment. We worked all night. We mixed over a couple of thousand quarters. I don't know how many more. I helped other persons do other packages at the apartment at 319 West 116th Street. All packages were heroin. One of the people didn't pay me for working for that person."

Knuckles argues that it was error under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), to admit this statement into evidence, since the jury could have inferred that he was the "person" referred to in the statement. He supports this contention by pointing to other evidence introduced at trial that he had not paid Simpson for the work she did for him.

■ The trial court instructed the jury that the statement was to be considered only against Smith. The prosecutor ob-

---

**10.** The *Stirone* court did not purport to overrule *Berger,* which it cited as a "compare," indicating that it was not a *contra.*

served this limitation in his summation. *Bruton* held, however, that such cautionary instructions will not always suffice to protect a defendant from the impermissible effects of a codefendant's statements. 391 U.S. at 135–37, 88 S.Ct. 1627–28, 20 L.Ed.2d at 484–86. Rather, under *United States v. Wingate*, 520 F.2d 309 (2d Cir. 1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976), the admission of the statements of a non-testifying codefendant are a violation of the defendant's Sixth Amendment right of confrontation if they are both clearly inculpatory as to the defendant and vitally important to the Government's case against the defendant, cautionary instructions notwithstanding. This case, however, satisfies neither of the *Wingate* tests for a violation of the right of confrontation.

▪ Smith's redacted statement did not mention Knuckles by name, nor did it contain any physical description of him. Though, when considered together with Simpson's evidence, the Smith statement might be taken to refer to Knuckles, Smith's statement standing *alone* did not serve to connect Knuckles with the crime. The statement was not "clearly inculpatory" with respect to Knuckles; *see Wingate, supra*, 520 F.2d at 314. Further, the Government's case against Knuckles did not depend upon any inferences drawn from Smith's statement. Knuckles was directly incriminated by Simpson's eyewitness testimony, which was corroborated by her tape-recorded statements to Sims. As in *Wingate*, it is "[o]nly when combined with considerable other evidence, which amply established [Knuckle's] guilt, [that] the statements tend to implicate him." *Wingate, supra*, 520 F.2d at 314.

## III

### OTHER ISSUES RAISED ON APPEAL

▪ The other issues raised by the appellants are without merit. Knuckles made no objection to the introduction into evidence of his post-arrest, post-indictment statement, and cannot raise the issue for the first time on appeal. *United States v. Fuentes*, 563 F.2d 527, 531 (2d Cir. 1977); *United States v. Braunig, supra*, 553 F.2d at 780.

▪ The recordings of Simpson's telephone conversations with Government informer Sims on October 12 and 14, 1976, during which she implicated Knuckles and Brown in the drug operation, were properly received into evidence. Simpson related the history of the conspiracy to Sims, including her dispute with Knuckles over her proper share of the proceeds, to enlist his aid in repairing the rift among the conspirators and obtaining for herself a fair allocation of the spoils.

▪ Appellants contend that the conspiracy had ended before the conversation and, of course, if that is true, it involved inadmissible hearsay against Knuckles. Fed.R.Evid. 801(d)(2)(E). It is not always easy to decide, however, when a conspiracy has achieved its purposes. We know that the Government cannot evade the statute of limitations on the ground that concealment of the crime was part of the conspiracy itself, *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); nor may it introduce a contested hearsay statement made after the conspiracy ended, offered for the truth of the contents thereof. *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). On the other hand, it is fair to say that where a general objective of the conspirators is money, the conspiracy does not end, of necessity, before the spoils are divided among the miscreants. *United States v. Floyd*, 555 F.2d 45, 48 n.10 (2d Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977); *United States v. Manarite*, 448 F.2d 583, 591 (2d Cir.), *cert. denied*, 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264 (1971). *See also United States v. Bermudez, supra*, at 96 (2d Cir. 1975). The statements are admissible as statements of a coconspirator in furtherance of the ends of the conspiracy.

▪ Further, the tape recordings were introduced into evidence after defense counsel had suggested that Simpson's testi-

314

mony had been fabricated in order to gain favor with the prosecution. The recordings, corroborating her testimony and made prior to the suggested motive for falsification, were properly admitted under Fed.R.Evid. 801(d)(1)(B) as prior consistent statements to rebut a charge of recent fabrication.

The evidence of an earlier conspiracy among the defendants and Simpson to distribute heroin was properly admitted as proof of similar acts by the defendants: "Evidence of prior criminal acts is admissible unless offered solely to prove criminal character or disposition or the proffered evidence is of such a highly prejudicial nature as to overwhelm its probative value." *United States v. Magnano*, 543 F.2d 431, 435 (2d Cir. 1976), *cert. denied*, 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977). The trial court's discretion in controlling evidence of prior similar acts is broad. Here the prior similar act shown was a heroin distribution scheme operating with many of the same people and methods as the one alleged by the Government in this case. The trial court acted well within its discretion in admitting the evidence. *United States v. Papadakis*, 510 F.2d 287, 294–95 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975).

Affirmed.