**UNITED STATES of America**

v.

**Nelson VARGAS, et al., Defendants.**

**No. 88 Cr. 325 (DNE).**

United States District Court,
S.D. New York.

Dec. 19, 1988.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; Alexandra Rebay, Asst. U.S. Atty., of counsel.

Roger J. Schwarz, for defendant Nelson Vargas.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Defendant Nelson Vargas was arrested by Drug Enforcement Administration ("DEA") agents on May 12, 1988, together with codefendants Anthony Ibanez, Felix Mejia–Castillo ("Mejia"), Jose Matista and Angela Matista. The government alleges that Vargas and the remaining defendants participated in a "reverse-buy" heroin transaction wherein DEA agents, posing as narcotic traffickers, were to provide a substantial amount of heroin in exchange for approximately $750,000.00. The government contends that Vargas was observed arriving at the scene of the transaction by car, with codefendant Mejia. Vargas then exited the vehicle and handed codefendant Ibanez a package of money.

On or about May 26, 1988, a Federal Grand Jury returned a two-count indictment charging defendants Vargas, Ibanez and Mejia with conspiracy to possess with intent to distribute heroin in violation of Title 21, United States Code, Section 846, and with possession of a mixture and substance containing a detectable amount of heroin with intent to distribute, in violation of Title 21, United States Code, Section 841(b)(1)(B). A superceding indictment, filed June 9, 1988, added Jose and Angela Matista as defendants in Count One, and charged all five defendants with conspiracy to possess with intent to distribute over one kilogram of heroin. Count Two remained unchanged.[1]

At trial, the Government expects to show, among other things, that on the evening of May 11, 1988, defendant Vargas was with defendant Mejia in a white Toyota Supra, that defendants Vargas and Mejia met with defendant Ibanez and delivered two bags of United States currency to defendant Ibanez, that Vargas then met with defendants Jose and Angela Matista and obtained an additional bag of currency from them, which money Vargas and Mejia subsequently transferred to Ibanez to be given to undercover DEA agents as payment for heroin.

At this juncture, defense counsel anticipates that Vargas's defense will be that although he was seated in the vehicle operated by Mejia, he did not participate in the transaction. Vargas contends that the agents' observations of his conduct are incorrect.

Vargas has made pretrial motions seeking, *inter alia,* an order 1) declaring the guidelines of the United States Sentencing Commission unconstitutional or alternatively staying their application, 2) precluding the Government from offering at trial evidence against Vargas concerning prior convictions and his asserted association with a certain illicit organization and 3) severance from co-defendant Mejia–Castillo and a separate trial.

## I. Motion To Declare Sentencing Guidelines Unconstitutional

At this juncture, all criminal defendants in cases arising after November 1, 1987 are to be sentenced under the United States Sentencing Guidelines. As defendant's counsel admits, Vargas is unquestionably subject to the Guidelines upon conviction. The issue of the constitutionality of the Sentencing Guidelines is currently pending before the Supreme Court in the cases *United States v. Mistretta* and *Mistretta v.*

---

**1.** Defendant Anthony Ibanez pleaded guilty to Count Two of the Indictment on September 16, 1988. Trial of defendant Vargas and the remaining co-defendants currently is scheduled to begin January 9, 1989.

72

*United States.*[2] Therefore, this court defers ruling on this issue until such time as that case has been decided or until the time of the sentencing.

## II. Motion To Preclude The Government From Offering Evidence Concerning Vargas's Prior Convictions And His Asserted Affiliation With "The Poison Organiation"

Based on information available to the government, Vargas has three prior felony convictions[3], all from the year 1984. The government contends that evidence relating to each conviction is relevant to the issue of defendant's knowledge and intent with respect to the narcotics charges in the instant indictment, and should be admitted pursuant to Rule 404(b) of the Federal Rules of Evidence in the event Vargas places his knowledge and intent in issue during the trial.

■ Under Federal Rules of Evidence 404(b) and 403, evidence of other crimes is admissible if it is relevant to any issue at trial other than defendant's character and if its probative value is not substantially outweighed by the risk of unfair prejudice. *Huddleston v. United States,* ─ U.S. ──, 108 S.Ct. 1496, 1499–1500, 99 L.Ed.2d 771 (1988); *United States v. Caputo,* 808 F.2d 963, 968 (2d Cir.1987); *United States v. Brennan,* 798 F.2d 581, 589 (2d Cir. 1986); *United States v. Figueroa,* 618 F.2d 934, 939 (2d Cir.1980). Similar act evidence may be introduced at trial to prove "opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b); *see, e.g., United States v. Smith,* 727 F.2d 214, 219–20 (2d Cir.1984); *United States v. Siegel,* 717 F.2d 9, 16 (2d Cir.1983).

If the evidence is offered for a permissible purpose, is relevant and it meets the Rule 403 balancing test, the court has broad discretion to admit the evidence. Similar act proof is often used to show defendant had the requisite knowledge and intent to commit the crime charged in cases where knowledge and intent are in issue. *See, e.g., United States v. Tussa,* 816 F.2d 58, 68 (2d Cir.1987); *United States v. Ramirez–Amaya,* 812 F.2d 813, 817 (2d Cir. 1987).

In the instant case, the anticipated defense that Vargas lacked the requisite intent to be a knowing participant in the crime clearly places his intent at issue. Federal Rules of Evidence 404(b) readily permits the introduction of prior convictions to prove intent, unless Rule 403 proscribes their use. The Second Circuit has repeatedly upheld the admission of similar narcotics related acts to prove intent in narcotics cases. *See United States v. Tussa, supra,* 816 F.2d at 68 (evidence of prior narcotics crimes admissible when defendants suggest their activities were not narcotics related despite the fact that heroin was delivered to the car in which they were sitting); *United States v. Ramirez–Amaya, supra,* 812 F.2d at 817 (evidence of previous attempts to import cocaine admissible where defendant claimed he had no intention of involving himself in unlawful activities).

### A. The Narcotics Possession and Sale Convictions

■ In the instant case, in the event Vargas contests his intent, evidence of his prior sale and possession of narcotics is highly probative of his knowledge and intent. Under Federal Rules of Evidence 403, evidence is admissible as long as the probative value is not substantially outweighed by the risk of unfair prejudice. *United States v. Figueroa,* 618 F.2d 934 (1980). Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission. *See United States v. Jamil,* 707 F.2d 638, 644 (2d Cir.1983); *United States v. Robinson,* 560 F.2d 507, 513–14 (2d Cir.1977) (en banc), *cert. denied,* 435

---

**2.** The Supreme Court granted certiorari in *Mistretta* and oral arguments were heard in the fall of 1988. 682 F.Supp. 1033, *cert. granted,* 108 S.Ct. 2818 (1988).

**3.** 1) Sale of narcotics in 1982; 2) possession of narcotics in 1983; 3) first degree manslaughter committed in 1983.

U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). Although a prior conviction is probative of a defendant's intent, it is also prejudicial in that it tends to prove defendant's propensity to commit crimes. *Figueroa*, 618 F.2d at 943. When material evidence has an additional prejudicial effect, Rule 403 requires the court to determine whether the "probative value of the evidence is substantially outweighed by the prejudicial tendency of the evidence to have *some other* adverse effect upon the defendant. *Id.* (emphasis added). Defendant must show some undue prejudice, apart from the prejudice implicit in Rule 404(b) evidence.

Although such evidence is potentially prejudicial to Vargas's defense, it does not rise to the level of unfair prejudice contemplated by Rule 403. *See United States v. Cirillo*, 468 F.2d 1233, 1240 (2d Cir.1972), *cert. denied*, 410 U.S. 989, 93 S.Ct. 1501, 36 L.Ed.2d 188 (1973) (that evidence was "damning" does not render it inadmissible). Consequently, evidence of the two prior narcotics convictions should be admitted.

However, as an exercise of caution, the court can effectively eliminate the effects of any prejudice by cautioning the jury[4] that the evidence was offered "for the sole and limited purpose of establishing that the defendant acted with criminal intent and knowledge." *See e.g., United States v. Danzey*, 594 F.2d 905, 915 (2d Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979) (danger that similar act evidence bearing on intent will have unduly prejudicial effect eliminated through proper cautionary instructions to the jury). Therefore, defendant's motion to preclude the government from introducing evidence of his two drug convictions is denied.

**B. The Homicide Conviction**

■ The Government expects to establish that the homicide conviction was linked to narcotics trafficking. Specifically, the Government intends to show that defendant Vargas operated a heroin distribution organization known as the Poison Orga-

nization and that the victim of the homicide purchased heroin other than that sold by the Poison Organization. Vargas, assisted by accomplices, fatally stabbed the victim.

Although Federal Rules of Evidence 404(b) would permit the introduction into evidence of this prior act, even the most carefully constructed cautionary instruction to the jury would not overcome the unduly prejudicial and inflammatory effect on the jury of evidence of a stabbing homicide. Consequently, the narcotics-related homicide presents a different situation than the narcotics possession and sale convictions. While the possession and sale convictions tend to negate defendant's defense of lack of intent in the instant transaction, an allegedly drug-related homicide does not clearly negate lack of intent in a later drug transaction. Moreover, in light of the two other narcotics convictions available to the Government, further evidence of prior drug involvement is cumulative. This evidence is less probative as to intent in the instant case than are the other two convictions and would serve merely to inflame the jury. Evidence having a strong emotional or inflammatory impact may pose a risk of unfair prejudice to the defendant because it distracts the jury from the relevant issues of the case. *Robinson*, 560 F.2d at 514. Therefore, defendant's motion to preclude the government from introducing evidence of Vargas's homicide conviction is granted.

**C. Affiliation With The "Poison Association"**

■ Vargas also seeks to preclude the Government from introducing evidence relating to his membership in the Poison Organization and to his prior association with co-defendant Mejia in that organization. The Government contends that evidence concerning Vargas's prior involvement in a heroin organization in which his co-defendant was also a member, and his prior association with that co-defendant, constitutes background evidence of the conspiracy with which Vargas is charged in the instant indictment.

---

**4.** The court would issue cautionary instructions to the jury before and after the evidence is

admitted as well as in its final charge to the jury.

Such evidence is admissible to elucidate the background, nature and basis of the charged conspiracy. *See United States v. Harris,* 733 F.2d 994, 1006 (2d Cir.1984) ("in numerous conspiracy prosecutions this court has permitted the government to use similar act evidence to inform the jury of the background of the conspiracy charged"); *United States v. Knuckles,* 581 F.2d 305, 314 (2d Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978) ("evidence of an earlier conspiracy among the defendants ... was properly admitted as proof of similar acts by the defendants"); *United States v. Moten,* 564 F.2d 620, 628 (2d Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 489, 54 L.Ed.2d 318 (1977) (cooperating witness permitted to testify regarding narcotics transactions with his alleged co-conspirators that took place before the conspiracy was alleged to have begun, on the ground that "proof of prior drug dealing by individual defendants with [the cooperator] at a time previous to the commencement of the conspiracy charged was clearly admissible to show the basis for the existence of the conspiracy charged"). *See also United States v. Kalaydjian,* 784 F.2d 53, 56 n. 3 (2d Cir.1986) ("a trial court has the discretion to admit prior act evidence in order to establish the background of the conspiracy"); *United States v. Araujo,* 539 F.2d 287, 289 (2d Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593 (1976).

Under these applicable rulings, the motion to preclude the Government from introducing evidence relating to Vargas's membership in the Poison Association and his prior association with co-defendant Mejia in that organization is denied.

**5.** Recently, the Supreme Court strongly reaffirmed the presumption in favor of joint trials:

"It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the the last-tried defendants who have had the advantage of knowing the prosecution's case

### III. Motion to Sever Vargas's Trial

Defendant seeks to sever his trial to obviate the danger of prejudice that would flow from proof of co-defendant Mejia's prior narcotics conviction and prior association with the Poison Organization.

Rule 14 of the Federal Rules of Criminal Procedure provides, in pertinent part:

If it appears that a defendant is prejudiced by a joinder of offenses or of defendants in an indictment ..., the Court may ... order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

The disposition of a motion for severance is entrusted to the sound discretion of the trial court. *See United States v. Nersesian,* 824 F.2d 1294, 1303 (2d Cir.1987); *United States v. Potamitis,* 739 F.2d 784, 790 (2d Cir.), *cert. denied,* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984).

Joint trials prevent the delay associated with *seriatim* prosecutions and therefore serve the interests of "both the government and the accused." *See United States v. McGrath,* 558 F.2d 1102, 1106 (2d Cir. 1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978); *see also United States v. Lyles,* 593 F.2d 182, 191 (2d Cir.1979) (as a general rule persons jointly indicted should be jointly tried to conserve judicial resources); *United States v. Taylor,* 562 F.2d 1345, 1362–63 (2d Cir.), *cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977); *United States v. Finkelstein,* 526 F.2d 517, 524, *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed. 2d 205 (1976).[5]

■ To override the presumption of a joint trial, a defendant must demonstrate

beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."
*Richardson v. Marsh,* 418 U.S. 200, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987) (footnote omitted).

substantial prejudice arising from a joint trial, not just a better chance of acquittal at a separate one. *United States v. Fantuzzi*, 463 F.2d 683, 687 (2d Cir.1972); *see also United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir.1984) ("substantial prejudice" does not mean a "better chance of acquittal" but an actual "miscarriage of justice").

■ Evidence offered against one defendant in a joint trial resolves the Rule 403 balancing test with respect to that defendant. If the evidence creates a risk of undue prejudice as to another co-defendant, the next issue which arises is whether the evidence is admissible in a joint trial, even though cautionary instructions are given by the court. Prior act evidence is not inevitably so prejudicial that limiting instructions will not suffice to protect the co-defendant against prejudice. *Figueroa*, 618 F.2d at 946. The possible risk that the jury might draw an inference against a co-defendant because of his association with a defendant shown to have a criminal record is so insubstantial that cautionary instructions to the jury would negate any prejudice. *Id.*

■ Defendant argues that "it requires little elaboration to discern how prejudicial such proof would be to Vargas who has his own prior convictions and the asserted 'Poison Organization' matters to contend with. Moreover, proof of a common membership in the 'Poison Organization' on the part of Vargas and Mejia might mislead or confuse the jury into concluding the alleged miscreants who were part of the same group in the past must have committed the offenses charged in the indictment in this case." (Defendant's Memo p. 8). The Government avers that Vargas does not demonstrate sufficient prejudice from a joint trial to warrant the severance.

Mejia's association with the Poison Organization does not suggest the type of prejudice to warrant granting Vargas a discretionary severance. First, with respect to Mejia's prior narcotics conviction, there is no indication that a jury could not or would not consider this evidence only against Mejia. Indeed, the evidence relating to the circumstances of Mejia's prior conviction would not implicate Vargas. Further, the evidence clearly is "adequately straightforward that the jury could consider it without any significant spillover effect," particularly if the jury is carefully instructed "to consider the case against each defendant separately." *United States v. Chang An-Lo*, 851 F.2d 547, 556 (2d Cir.1988).

Second, with respect to Mejia's prior involvement in the Poison Organization together with Vargas, defendant's contention that he will be unfairly prejudiced by introduction, in a joint trial, of evidence of his prior association with Mejia is incorrect. For the reasons enunciated earlier, evidence relating to each defendant's involvement in the Poison Organization, and to the defendants' prior association in connection with that heroin organization is fully admissible, as evidence relating to the background, nature, and basis of the conspiracy. Since Vargas and Mejia are charged in the same conspiracy involving the same acts, and are alleged to be in association together with respect to these acts, evidence of the past association of the two defendants will be offered against each defendant and there will therefore be no "spillover" problem. *Cf. United States v. Rosenwasser*, 550 F.2d 806, 808–09 (2d Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83 (1977) (no prejudicial spillover to warrant severance even when co-defendants were *not* both involved in prior similar acts).

Thus, defendant Vargas cannot meet the heavy burden of showing that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial. *United States v. Sotomayor*, 592 F.2d 1219, 1228 (2d Cir.1979). Accordingly, defendant's motion for severance is denied.

## CONCLUSION

Defendant's motion to declare the Sentencing Guidelines unconstitutional will be deferred, pending the Supreme Court decision in *United States v. Mistretta*. Defendant's motion to preclude the government from offering evidence of prior convictions is denied as to the two narcotics

convictions and granted as to the homicide conviction. Defendant's motion to preclude the government from offering evidence relating to his affiliation with the drug-related Poison Organization is denied. Finally, defendant's motion for severance is denied.

SO ORDERED.