**UNITED STATES of America,
Appellee,**

v.

**Arthur DANIELSON, Defendant–
Appellant.**

**Docket No. 98–1689.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 8, 1999.

Decided Dec. 22, 1999.

---

Georgia J. Hinde, New York, NY, for Defendant–Appellant.

Alexandra A.E. Shapiro, Assistant United States Attorney for the Southern Dis-

trict of New York (Mary Jo White, United States Attorney, Hector Gonzalez, Assistant United States Attorney, of counsel) New York, NY, for Appellee.

Before: Oakes, Cardamone, and Cabranes, Circuit Judges.

PER CURIAM:

Following a one-week jury trial before Judge Robert P. Patterson in the United States District Court for the Southern District of New York, defendant-appellant Arthur Danielson was convicted on June 3, 1997 on one count of knowing possession by a convicted felon of ammunition, in violation of 18 U.S.C. § 922(g). On October 9, 1998, Judge Patterson sentenced Danielson pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), to, *inter alia*, 180 months' imprisonment. On appeal, Danielson contests the validity of his conviction, claiming that the District Court permitted a constructive amendment of the charges against him. Danielson also challenges his sentence, raising an issue of first impression with respect to whether the District Court improperly counted his 1982 conviction for weapons possession in the second degree as a "violent felony" as that term is defined under the ACCA. Because we conclude that there was no constructive amendment of the indictment, and that it was not plain error to enhance Danielson's sentence under the ACCA, we affirm.

## I.

Danielson was arrested on March 13, 1997 in the passenger seat of a car that police had pursued on a fifteen-minute high-speed chase through the streets and highways of New York City. When the police finally succeeded in stopping the car, which was registered to Danielson's wife, they apprehended Danielson and found on his person a pair of handcuffs, a handcuff key, and a leather gun holster. The police took from the passenger seat of the car an ammunition clip containing seven rounds of ammunition, and in the back seat discovered a bulletproof vest marked "Police" and a pair of walkie-talkies. Finally, in searching the side of the road for items they had seen discarded from the car during the chase, the police recovered another empty gun holster and a leather case containing fake New York Police Department and Drug Enforcement Agency shields.

On April 2, 1997, a Grand Jury sitting in the Southern District issued a one-count indictment charging Danielson with possession of ammunition after having been convicted of a felony, in violation of 18 U.S.C. § 922(g). Specifically, the indictment alleged that Danielson

unlawfully, wilfully, and knowingly did possess ammunition in and affecting commerce, and did receive ammunition which had been shipped and transported in interstate and foreign commerce, *to wit, 7 rounds of .45 calibre ammunition.*

(emphasis added). Trial commenced on May 27, 1997.

At trial, the government called as an expert witness Anthony Annunziato, a special agent with the United States Department of the Treasury's Bureau of Alcohol, Tobacco, and Firearms. Annunziato explained that each live round of ammunition is made up of four components: a projectile bullet, an exterior brass shell casing (the "shell"), propellent powder within the shell, and a primer that ignites the powder. Each shell bears a manufacturer's stamp; the rounds Danielson possessed were marked "RP," "WCC," or "MRP." Annunziato testified that rounds marked "RP" were manufactured by Remington Peters in Arkansas, "WCC" by Winchester Cartridge Company in Illinois, and "MRP" by Magnatech Recreational Products in Nevada. On this basis, he testified on direct examination that the rounds had traveled in interstate commerce.

On cross examination, Annunziato admitted that while the shells definitely traveled in interstate commerce into New York, it was possible that the rounds could

have been "reloaded" entirely in New York. In this process, a gun "buff" could have saved money by refilling a spent shell with a new bullet, propellent powder, and primer. The reloaded shell would constitute a "new" round.

Over defense counsel's objection, Judge Patterson charged the jury that in determining whether Danielson had possessed ammunition that had traveled in interstate commerce, the jury could consider the term "ammunition" as it is defined for purposes of § 922(g): "Any ammunition or cartridge cases, primers, bullets or propellent powder designed for use in any firearm." 18 U.S.C. § 921(a)(17)(A). Defense counsel argued that as the indictment specifically had identified *seven rounds* of ammunition, Judge Patterson's instruction on the statutory definition of ammunition, which is framed in the disjunctive to include the component parts of a round, constituted an impermissible broadening of the indictment. Counsel contested this point to no avail at the close of the government's case, during the charge conference, during jury deliberations, and in defendant's post-conviction motion under Rule 29 of the Federal Rules of Criminal Procedure.

On the first day of trial, the government filed a prior felony information notifying Danielson that, if convicted, he was subject to enhanced penalties under the ACCA. While there was some confusion about which three of Danielson's numerous criminal convictions could or would serve as the predicate "violent felonies" required for him to be sentenced under the ACCA, the government ultimately submitted that his 1967 conviction for burglary in the third degree, his 1971 conviction for attempted robbery in the third degree, and his 1982 conviction for criminal possession of a weapon in the second degree were violent felony convictions under the ACCA. Judge Patterson accepted this conclusion, to which defense counsel did not object, and sentenced Danielson under the ACCA to,

*inter alia,* 180 months' imprisonment. This timely appeal followed.

## II.

### A. Constructive Amendment

■ Danielson contends that Judge Patterson's instructions impermissibly broadened the allegations set forth in the indictment, allowing the jury to convict him of conduct with which he had not been charged. Section 922(g) provides in relevant part:

It shall be unlawful for a person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... [to] possess ... any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

To satisfy the interstate commerce requirement, the government need only make a minimal showing that the ammunition in question was "in or affecting" interstate commerce. *See United States v. Sanders,* 35 F.3d 61, 62–63 (2d Cir.1994) (per curiam). As noted above, the indictment charged that Danielson possessed "ammunition ... to wit, 7 rounds of .45 calibre ammunition" that had traveled in interstate commerce.

■ As we have had occasion to explain in the past,

[a]n indictment is constructively amended when the proof at trial broadens the basis of conviction beyond that charged in the indictment. Constructive amendment of an indictment is a *per se* violation of the grand jury clause of the Fifth Amendment.

However, an impermissible alteration of the charge must affect an essential element of the offense, and we have consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial.

*United States v. Patino,* 962 F.2d 263, 265–66 (2d Cir.1992) (internal citations and quotation marks omitted). We also have

observed that "[c]onstructive amendment occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Wallace*, 59 F.3d 333, 337 (2d Cir.1995) (internal quotation marks omitted). The critical determination is whether the allegations and the proof "substantially correspond." *Patino*, 962 F.2d at 266 (internal quotation marks omitted).

We reject Danielson's claim that the District Court permitted a constructive amendment by allowing the government to proceed on the theory that the shells, rather than the entire rounds, had traveled in interstate commerce. The essential element of the offense charged was that Danielson possessed ammunition that had traveled in interstate commerce, not the precise nature of that ammunition. Whether the government proved that shells or entire rounds had so traveled, there is no doubt that Danielson had notice of the "core of criminality" to be proven at trial and that he was convicted of the offense charged in the indictment. Thus, in this case, the allegations and proof "substantially correspond."

The Sixth Circuit's decision in *United States v. Robison*, 904 F.2d 365 (6th Cir. 1990) which we cited with approval in *Patino*, is instructive on this point. In *Robison*, the Court affirmed a conviction where the indictment had charged use of a .357 Magnum but the proof at trial demonstrated use of a shotgun. The comparatively minor deviation here—the government's proof that the shells, rather than the entire rounds, had traveled in interstate commerce—is even less material than the deviation at issue in *Robison*. Thus, this case is akin to others where we have affirmed conviction when the proof offered at trial was different, but not materially different, than the allegations in the indictment.

*See, e.g., Patino*, 962 F.2d at 265–66 (indictment mentioned one gun; prosecutor referred to three additional guns); *Wallace*, 59 F.3d at 337–38 (indictment charged deposit and receipt of bogus checks, but evidence only established receipt).

The constructive amendment cases on which Danielson chiefly relies, *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) and *United States v. Zingaro*, 858 F.2d 94 (2d Cir.1988), are readily distinguishable from this case. In *Stirone*, the Supreme Court overturned a conviction (under the Hobbs Act) where the indictment had charged that interstate commerce was affected because a Pennsylvania manufacturer of concrete had imported sand to make the concrete. However, the district court instructed the jury that the government also could satisfy the interstate commerce element of the crime by proving that the concrete manufactured "was used for constructing a mill which would manufacture articles of steel to be shipped in interstate commerce ... from Pennsylvania into other States." 361 U.S. at 214, 80 S.Ct. 270 (internal quotation marks omitted). In *Zingaro*, the defendant was charged with loansharking and debt collection in connection with an illegal gambling operation; the trial court refused to instruct the jury that it could not base conviction on evidence concerning an illegal loan to one "George the Greek" enabling him to renovate his Bronx diner. 858 F.2d at 99. In both cases, the deviation from the indictment concerned behavior entirely separate from that identified in the indictment. In the instant case, in contrast, Danielson complains that the government proved at trial not that each of the seven rounds of ammunition identified in the indictment traveled in interstate commerce, but only that a component of each of the rounds did so. Because the challenged deviation is so much less significant than the deviations that led to the overturning of the convictions in *Stirone* and *Zingaro*, the decisions in those cases

do not suggest, much less require, that we vacate the conviction in the instant case.[1]

## B. Sentencing Under the ACCA

■ In challenging his sentence, Danielson raises an issue of first impression: is a conviction under N.Y. Penal Law § 265.03 a "violent felony" as that term is defined under the ACCA? If the District Court's affirmative answer was not plain error, Danielson must serve fifteen years in prison; if it was plain error, his sentence likely will range from eighteen to twenty-four months.

The ACCA provides in relevant part:

In the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be ... imprisoned not less than fifteen years.

[T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* ....

18 U.S.C. § 924(e)(1), (e)(2)(B) (emphasis added). Danielson contends that the District Court improperly concluded that his 1982 weapons possession conviction in the Supreme Court of the State of New York under N.Y. Penal Law § 265.03 was a violent felony for purposes of determining whether he should be sentenced under the ACCA.

■ It is undisputed that Danielson failed to raise any objection below to the District Court's conclusion that the 1982 conviction was a violent felony under the ACCA. Therefore, we review the District Court's determination only for "plain error." *See* FED.R.CRIM.P. 52(b); *Johnson v. United States,* 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Under this deferential standard, we will vacate a judgment only if we find that the District Court made a mistake that is "clear and obvious," "affected substantial rights," and "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Martinez–Rios,* 143 F.3d 662, 676 (2d Cir.1998) (internal quotation marks omitted).

■ In *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court explained that in determining whether a prior conviction constitutes a "violent felony" under the ACCA, a court must adopt a "categorical approach" generally requiring the court "to look only to the fact of conviction and the statutory definition of the prior offense." 495 U.S. at 602, 110 S.Ct. 2143. However, in the rare case where the statute reaches both conduct that satisfies the "violent felony" definition and conduct that does not, "the charging instrument and jury instructions may be consulted to determine whether the prior conviction was imposed for conduct that qualifies for enhancement purposes." *United States v. Palmer,* 68 F.3d 52, 56 (2d Cir.1995); *cf. Taylor,* 495 U.S. at 602, 110 S.Ct. 2143.

■ In 1982, Section 265.03 of the N.Y. Penal Law provided: "A person is guilty of criminal possession of a weapon in the second degree when he possesses a machine-gun or *loaded* firearm *with intent to use the same unlawfully against another.*" (emphasis added). While it might seem

---

1. Nor has Danielson demonstrated prejudice. While defense counsel elicited from Annunziato testimony concerning reloading, it is unclear what other options were presented to counsel; in light of the markings on the shells, there is no way Danielson could have challenged the government's evidence that the ammunition, as defined for purposes of § 922(g), had traveled in interstate commerce.

**672**

clear that possession of a "loaded firearm with intent to use it unlawfully against another" would be a violent felony under the ACCA in that the offense "involves conduct that presents a serious potential risk of physical injury to another," the analysis is complicated by N.Y. Penal Law § 265.15(4), which provided in relevant part that "[t]he possession by any person of any ... weapon, instrument, appliance or substance designed, made or adapted for use primarily as a weapon, is presumptive evidence of intent to use the same unlawfully against another." This presumption is rebuttable, *see People v. Lewis,* 116 A.D.2d 16, 19–20, 499 N.Y.S.2d 709 (1st Dep't 1986), but difficult to overcome. *See People v. Pons,* 68 N.Y.2d 264, 268, 508 N.Y.S.2d 403, 501 N.E.2d 11 (1986) (holding that even where a defendant's *use* of gun was justified on self-defense grounds, he still had to overcome statutory presumption regarding *possession* of gun to convince the trier of fact that he "lacked the intent to use the weapon unlawfully during the continuum of time that he possessed it prior to the shooting").

As it appears that § 265.03 might reach conduct that qualifies as a violent felony under the ACCA and conduct that does not, it is appropriate under *Taylor* and *Palmer* to look to the jury charge in Danielson's 1982 trial in the Supreme Court. In 1982, the presiding judge instructed the jurors that "[t]he law does not require the jury to presume" intent, but that they had to determine whether it was Danielson's "conscious aim or objective" to use a loaded firearm against another. Thus, it does not appear that Danielson was convicted on the basis of "mere" possession. Accordingly, it was not plain error (*i.e.,* a "clear and obvious mistake") for the District Court in the instant action to determine that Danielson's 1982 weapons possession conviction was a violent felony under the ACCA. *Cf.*

*United States v. Frazier–El,* 10 F.Supp.2d 508 (D.Md.1998) (conviction for openly carrying a dangerous weapon with intent to injure is a violent felony under the ACCA); *Impounded (Juvenile R.G.),* 117 F.3d 730, 738 (3d Cir.1997) (conviction for possession of a dangerous weapon with intent to use the same unlawfully against another is an offense that involves a substantial risk that physical force may be used and thus triggers a sentence enhancement under 18 U.S.C. § 5032).[2]

## *CONCLUSION*

The District Court did not erroneously permit a constructive amendment of the indictment, and it was not plain error for the Court to conclude that Danielson's 1982 conviction for weapons possession in violation of N.Y. Penal Law § 265.03 was a "violent felony" for purposes of applying the sentencing enhancement prescribed by the ACCA. Accordingly, we affirm both Danielson's conviction under 18 U.S.C. § 922(g) and his enhanced sentence under the ACCA.

---

**2.** We do not address whether we would reach the same conclusion were we undertaking a *de novo* review.