**UNITED STATES of America,**

v.

**Daniel D'AMELIO,[1] Defendant.**

**No. 07 CR 548 (CM).**

United States District Court,
S.D. New York.

June 1, 2009.

---

**1.** The Hon. Deborah Batts granted an unopposed motion to change the caption to reflect the defendant's actual name, Daniel D'Amelio.

Randall Wade Jackson, Antonia Marie Apps, U.S. Attorney's Office, New York, NY, for United States of America.

David M. Stern, Rothman, Schneider, Soloway & Stern, LLP, Jeffrey Lichtman, New York, NY, Jonathan Isidor Edelstein, Kew Gardens, NY, for Defendant.

## DECISION ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR A NEW TRIAL PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE 29 AND 33 (AMENDED)

McMAHON, District Judge:

After being convicted by a jury of one count of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b), defendant Daniel D'Amelio moves for judgment of acquittal and/or a new trial, pursuant to Fed.R.Crim.P. 29(c) and 33. The defendant argues that he is entitled to a new trial pursuant to Rule 33 because the court's jury instructions, which were as requested by the Government, resulted in a constructive amendment of the indictment. Alternatively, defendant argues that the conviction should be vacated and the indictment dismissed pursuant to Rule 29(c) because 18 U.S.C. § 2422 was unconstitutionally overbroad as applied to him.

The motion for a judgment of acquittal is denied. The motion for a new trial, however, is granted.

*Background*

In the summer of 2004, Daniel D'Amelio, a screenwriter, began contacting an individual using the screenname "MaryinNYC1991" in an America Online ("AOL") chatroom. (Tr. 41–44).[2] D'Amelio had a number of internet and telephone conversations with "Mary" between August 6 and September 13, 2004, when he was arrested. (Tr. 44–87; 270–99). Those conversations ranged over many subjects-from a screenplay on which D'Amelio was working to the defendant's grief at the death of his cat, Eddie. Sexual matters were also discussed; D'Amelio asked "Mary" about, among other things, her relationship with a boyfriend, whether she had ever had an orgasm, and what was the wildest thing she had done. D'Amelio also told "Mary" what he likes to do sexually with girls.

"Mary's" online personal profile identified her as twelve years old. (Tr. 44). In fact, she was the creation of a team of undercover New York City police officers. On the internet, "Mary" was played by Officer James Held. Over the telephone and in person, she was Detective Anne Psomas, who was 23 years old. (Tr. 41–46).

All of the contacts between defendant and "Mary"—whether over the internet or the telephone—were taped.

The defendant met with "Mary" in Washington Square Park on two separate occasions. (Tr. 87). He was arrested by the New York City Police Department during the second meeting, on September 13, 2004. At the time of the arrest, defendant and the undercover were leaving the park, ostensibly headed to a movie theatre. (Tr. 60–61).

---

**2.** "Tr." refers to the trial transcript of this case; "GX" refers to the Government exhibits introduced into evidence.

D'Amelio's case was originally handled by the Manhattan District Attorney's Office; eventually it shifted to the United States Attorney and, on June 15, 2007, a grand jury in the Southern District of New York returned a one count indictment against him. Defendant was arraigned before Magistrate Judge Gabriel Gorenstein on June 28, 2007, and he pleaded not guilty.

The indictment contains a single substantive paragraph, which reads as follows:

From on or about August of 2004, up to and including in or about September of 2004, in the Southern District of New York, DAN D'AMELIA [sic], a/k/a Wamarchand@aol.com, the defendant, unlawfully, willfully and knowingly, did use a facility and means of interstate commerce to persuade, induce, entice and coerce an individual who had not attained the age of 18 years to engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do so, to wit, D'AMELIA [sic] used a computer and the Internet to attempt to entice, induce, coerce and persuade a minor to engage in sexual activity in violation of New York States laws.

It is the "to wit" clause that gives rise to the instant motion for a new trial.

On July 22, 2007, the Government produced Rule 16 discovery to the defendant. The discovery included print-outs of all of the chats between the defendant and MaryinNYC1991, and audio tapes and compact discs containing recordings of the telephone calls between the defendant and "Mary." (*See* July 22, 2007 Discovery Letter, Exhibit A to Govt. Response to Rules 29/33 Motion). Defendant and "Mary" discussed meeting online but the actual meetings were arranged over the telephone.

Neither the defendant nor the Government made any pretrial motions.

The case was set for trial on January 26, 2009. Because of a conflict in the schedule of the judge who was originally assigned to the case, the case was reassigned to me on January 16, 2009—ten days before the trial, in a case that was already 19 months past indictment.

Pursuant to instructions from my predecessor, the defendant had submitted objections to the Government's proposed jury charges on January 21. Defendant objected to the proposed charge that would have allowed the jury to convict the defendant if the Government proved beyond a reasonable doubt that he used either the internet or the telephone (or both) to entice the person he thought was a minor into sexual contact. D'Amelio argued that this worked a constructive amendment of the indictment, because the "to wit" clause identifies only the internet—not the telephone—as the means of committing the offense.

Concerned that this issue might affect the opening statements, the court raised it with the parties at our pre-trial conference, on January 22. The Government was not prepared to respond but volunteered to file something. The court did not receive that response until the morning of January 27—after the voir dire had concluded, and with opening statements about to be made.

On the basis of some admittedly (and unfortunately) hasty research, the court agreed with the view propounded by the Government, and ruled on the record that (1) reliance on the telephone conversations would at most constitute a variance, rather than a constructive amendment, because both the internet and the telephone were facilities of interstate commerce; and (2) the defendant suffered no prejudiced from this particular variance, since he had obtained the tapes and transcripts of the telephone conversations months earlier

and had ample time to prepare his defense accordingly.

The case was tried in accordance with that ruling, and the court charged the jury (over defendant's objection) as follows:

> The third element the government must prove beyond a reasonable doubt is that the defendant used a facility or means of interstate commerce in order to attempt to persuade, induce, or entice the person he believed to be a minor to engage in sexual activity. Both the telephone and the internet qualify as facilities or means of interstate commerce. Therefore, you must determine whether the government has proven beyond a reasonable doubt that a communication that constitutes an attempt to persuade, induce, or entice a person to commit a sexual act, was actually transmitted by means of a telephone, or the internet, or both.

(Tr. at 483). On February 4, 2009, after two days of deliberations, the jury found defendant guilty of the lone count in the indictment.

*Rule 33 of the Federal Rules of Criminal Procedure*

 Fed. R. Crim. P. 33(a) provides, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." This Court is imbued with "broad discretion ... to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir.2001). The Court's broad discretion empowers it to grant relief based not only on the sufficiency *vel non* of the evidence at trial but on any other circumstance that might render the trial "essentially unfair," including trial errors. *See United States v. Muyet*, 994 F.Supp. 501, 520 (S.D.N.Y.1998) (*citing United States ex rel. Darcy v. Handy*, 351 U.S. 454, 462, 76 S.Ct. 965, 100 L.Ed. 1331 (1956)). Where Rule 33 relief is sought based on trial errors, the standard

of review before this Court is the same as on appeal. *See United States v. Zagari*, 111 F.3d 307, 319–20 (2d Cir.1997) (applying appellate standard to the denial of a Rule 33 *Brady* motion).

*18 U.S.C. § 2422(b) Is Not Unconstitutionally Overbroad As Applied in this Case*

 The defendant argues that the application of Section 2422(b) is, "under the unique circumstances of the instant case, overbroad as applied." This argument is completely foreclosed by the Second Circuit's decision in *United States v. Gagliardi*, 506 F.3d 140 (2d Cir.2007), the relevant facts of which are indistinguishable from those in this case.

Gagliardi was prosecuted as a result of a government-informant sting that occurred in an internet chat forum called "I Love Older Men." *Id.* at 143. The Court of Appeals held:

> [T]he statute punishes the act of enticing or attempting to entice a minor when it is knowingly done; it does not implicate speech. Moreover, when fantasy speech is directed toward an adult believed to be a minor, it is, in effect, the vehicle through which a pedophile attempts to ensnare a victim, *cf.* [*United States v.*] *Meek*, 366 F.3d [705] at 721 [ (9th Cir.2004) ], and we have held, unremarkably, that " '[s]peech is not protected by the First Amendment when it is the very vehicle of the crime itself,' " *United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir.1990) (citation omitted); *see also Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498, 69 S.Ct. 684, 93 L.Ed. 834 (1949) ("It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute."). By Gagliar-

di's own admission in his brief, "there is no First Amendment right to persuade minors to engage in illegal sex acts," Appellant's Br. at 38; *see also* [*United States v.*] *Tykarsky,* 446 F.3d [458] at 473 [ (3d Cir.2006) ]; there is likewise no First Amendment right to persuade one whom the accused believes to be a minor to engage in criminal sexual conduct. *Id.* at 148.

The defendant's as-applied challenge to Section 2422(b) would have merit only if the jury had accepted his claim that he actually believed that "Mary" was an adult. But it did not. The jury was charged that it could only convict defendant if the Government proved beyond a reasonable doubt that D'Amelio actually believed "Mary" to be a minor. The verdict necessarily means that the jury rejected defendant's testimony on that subject, and that the Government proved beyond a reasonable doubt that defendant believed he was interacting with a child.

Defendant's motion for a judgment of acquittal on constitutional grounds is, therefore, denied.

*The Jury Charge Worked a Constructive Amendment of the Indictment*

 "A defendant has the right to be tried only on charges contained in an indictment returned by a grand jury." *Hassan,* 542 F.3d at 991–92, *quoting United States v. Wozniak,* 126 F.3d 105, 109 (2d Cir.1997). When the trial evidence or the jury charge operates to "broaden[ ] the possible bases for conviction from that which appeared in the indictment," the indictment has been constructively amended. *United States v. Miller,* 471 U.S. 130, 138, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). Put another way, a Fifth Amendment violation occurs where the jury charge "alters an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indict-

ment." *United States v. Salmonese,* 352 F.3d 608, 620 (2d Cir.2003). Constructive amendment is a *per se* violation of the Fifth Amendment, even if the defendant has suffered no prejudice. *Hassan,* 542 F.3d at 992; *United States v. Roshko,* 969 F.2d 1, 5–6 (2d Cir.1992).

 The Second Circuit distinguishes constructive amendments from variances. "A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Salmonese,* 352 F.3d 608, 621 (2d Cir. 2003). If a "generally framed indictment encompasses the specific legal theory or evidence used at trial," then a variance rather than a constructive amendment will be found. *See id.* at 620. A variance is not a *per se* Fifth Amendment violation; it only becomes a violation when the defendant is prejudiced by the variance, as when disclosure is late. *United States v. Dupre,* 462 F.3d 131 (2d Cir.2006).

 The motion before the Court asserts that the indictment was not "generally framed," because it included a "to wit" clause that identified one, and only one, specific "facility of interstate commerce" that was used to commit the crime charged. Defendant argues that, having so framed the indictment, the Government could only win its conviction by proving beyond a reasonable doubt that the defendant used the specified means—the internet—to entice the minor into having sex. By instructing the jury that it could convict him if he used *either* the Internet or the telephone system to attempt to entice a minor, defendant argues that the Government (which requested the instruction), and ultimately the Court, changed the "charging terms" in the indictment, "broaden[ing] the possible basis for conviction beyond that contained in the indict-

ment." The defendant does not argue that the charge misstated the law—only that, by specifying the internet but not the telephone as the means of commission of the offense, the indictment compelled the court to charge the jury that only evidence of using the internet to entice the purported minor would support a conviction.

If the "charging terms" in the indictment include the "to wit" clause, then defendant is correct, and the charge as delivered was erroneous. If, however, the "charging terms" are limited to the statutory language about "use of a facility of interstate commerce," the Government is correct, because the telephone, like the internet, is a "means of interstate commerce." *United States v. Giordano*, 442 F.3d 30, 39 (2d Cir.2006). Defendant does not challenge the Court's conclusion that he was not prejudiced if this was in fact a variance, nor could he mount a successful challenge in this regard; he received tapes of the telephone calls that were introduced into evidence 18 months prior to trial.

Defendant relies principally on four cases in support of his argument that the "charging terms" include the "to wit" clause.

First and foremost among them is *Stirone v. United States*, 361 U.S. 212, 213–14, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). The defendant in that case was indicted for a Hobbs Act violation. The indictment charged that Stirone had unlawfully obstructed, delayed and affected interstate commerce between the several states by extorting a man named Rider, who had a contract to supply ready-mixed concrete for the construction of a steel plant in Allentown, Pennsylvania. Rider imported sand to use in the preparation of the concrete from outside Pennsylvania, and the indictment specifically alleged that "the movement of the aforesaid materials and supplies in such commerce [i.e., the sand]" was the basis for the interstate commerce element of the crime. At trial, over a defense objection on relevance grounds, the Government introduced evidence that steel manufactured at the plant that was built using Rider's concrete traveled in interstate commerce. The court charged the jury that the interstate commerce element of the Hobbs Act could be satisfied if the Government proved beyond a reasonable doubt either that the sand had been shipped into Pennsylvania from out of state or that Rider's concrete was used to build a mill that would manufacture articles of steel to be shipped in interstate commerce. After Stirone's conviction, he challenged the Government's evidence and the instruction as a constructive amendment of his indictment.

The Supreme Court agreed with Stirone that the indictment had been constructively amended, concluding:

> The indictment here cannot fairly be read as charging interference with movements of steel from Pennsylvania to other States.... The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built with Rider's concrete. And it cannot be said that, a new basis for conviction having been added, Stirone was convicted solely on the charge made in the indictment the grand jury returned.... Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge.

*Id.* at 217, 80 S.Ct. 270. The high court identified the "fatal error" in the case as the mention of a specific type of interstate commerce in the indictment:

> It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another has been burdened.

*Id.* at 218–19, 80 S.Ct. 270.

In *United States v. Milstein*, 401 F.3d 53 (2d Cir.2005), the defendant was charged with *inter alia:* distributing misbranded drugs in interstate commerce with fraudulent intent, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2) (Count Three). Count Three of the indictment alleged that "Forgery or falsification of any part of the packaging material, including the instructional inserts, lot numbers or expiration dates, renders the drug misbranded under federal law," and that Milstein and others "regularly distributed [the modified drugs] that had been repackaged using *forged materials*." It further alleged that "They sold these re-packaged drugs as if they were the original product from the licensed manufacturers, thus distributing misbranded drugs." *Milstein*, 401 F.3d at 64. Nonetheless, the jury was instructed that defendant could be found guilty of violating the statute if he falsified the packaging or adulterated the drugs themselves.

The defendant appealed his conviction, and the Second Circuit reversed, ruling that Milstein could not be convicted of the misbranding offense based on proof that the drugs were not sterile. *Id.* Because the indictment was limited to repackaging, the Government could not broaden that theory at trial—even to include other methods of commission that violate the statute under which defendant was charged. *Id.* The court's rationale was that the defendant had been indicted for forging the packaging and he had a Fifth Amendment right to be tried only for the specific offense to which he was indicted, "which cannot be taken away [by] court amendment." *Id.* at 65.

In *United States v. Wozniak*, 126 F.3d 105 (2d Cir.1997), the defendant was charged with one count of conspiracy to possess with intent to distribute a controlled substance containing cocaine and methamphetamine, one count of possession with intent to distribute cocaine, and three counts of using a communication device to facilitate a conspiracy to distribute cocaine and methamphetamine, The Government presented some evidence about cocaine at trial, but most of its proof related to the distribution of marijuana. The trial court instructed the jury that it could find guilt on the basis of transactions involving any illegal controlled substance. The Government argued that this was at most a variance, but the Court of Appeals held that the indictment had been constructively amended:

> The indictment could have charged Wozniak generally with offenses involving controlled substances in violation of 21 U.S.C. § 841(a)(1) without mention of any specific drug. Had all the counts of the indictment not specified cocaine and methamphetamine, the conviction based solely on marijuana evidence might stand. If the indictment had been drawn in general terms and Wozniak was in doubt about the controlled substance alleged, he could have sought a bill of particulars pursuant to Fed. R.Crim.P. 7(f) setting forth the specific allegations of the offense charged. Also, the indictment did not contain a catch-all provision that would allow a conviction for Wozniak's involvement with any illegal substance.

*Id.* at 109–10. Rejecting the Government's argument that "the precise controlled substance is not a material element of a narcotics conspiracy," the court held that the four corners of the indictment "stated no single set of operative facts that would alert Wozniak that at trial he would face marijuana evidence as well as whatever cocaine evidence the government possessed." *Id.* at 110. The court placed great weight on the fact that Wozniak had not been named In a separate but related indictment predicated entirely on the conspiracy to distribute marijuana that was the subject of the proof at trial. *Id.* at 109.

Finally, in *United States v. Hassan,* 542 F.3d 968 (2d Cir.2008), the Second Circuit held that an indictment which specifically charged the defendant with trafficking in cathinone, a Schedule 1 controlled substance, could not be broadened at trial to include trafficking in another drug, cathine, even though both cathinone and cathine are components of the khat leaves. *Hassan,* 542 F.3d at 992. Citing *Wozniak,* the court noted that the Government "could have charged this case as one involving either cathinone or cathine, or both," but that it instead "made the deliberate choice to indict Hassan with conspiring to import and possess cathinone." *id.* at 971.

In opposing defendant's motion, the Government distinguishes these cases from D'Amelio's. It distinguishes *Stirone* and *Milstein* by arguing that the alternative theories introduced into evidence at trial—the shipment of steel from the mill rather than the use of imported sand to make concrete, and the contamination of the drugs contained inside the packaging rather than the forging of the packaging materials themselves—were completely different from and wholly unrelated to the conduct specified in the indictment. In addition to noting that in its opinion the panel that decided *Wozniak* limited the holding to the precise facts of that case (of which the most important was the existence of the second indictment charging others, but not defendant, with the marijuana conspiracy proved at Wozniak's trial, see *Wozniak,* 126 F.3d at 111), the Government distinguishes both it and *Hassan* on the ground that the defendants in those cases were indicted for participating in conspiracies to import a particular drug, while the proof at trial involved entirely different conspiracies to import different drugs.

The Government's proposed distinction is not without resonance.[3] A conspiracy to distribute cocaine is not the same thing as a conspiracy to distribute marijuana; and adulterating drugs is decidedly different from forging the packaging into which drugs are placed. There was no reason for the Government to introduce evidence about where steel manufactured in the Allentown facility would be taken once it was finished in order to prove what the indictment specified in *Stirone,* or to elicit testimony about adulteration of the drugs in *Milstein* in order to prove that the packaging in that case had been falsified. In *Wozniak* and *Hassan,* evidence of uncharged conspiracies was not directly material to proving the conspiracies actually charged; in *Wozniak* the grand jury had not indicted Wozniak, but had indicted others, for the marijuana scheme that was the subject of much of the testimony at his trial. In short, the evidence that supported the Government's alternative, expanded theories was really not germane to

**3.** Indeed, it resonated with this court when I considered the matter at the outset of the trial.

the "core criminality" charged in those cases.

In this case, by contrast, the core criminality is enticing a little girl (or a person the defendant believed was a little girl) into a position where she could become the victim of a sexual predator. All the communications relied on by the Government, whether e-mails or telephone calls, took place as part of a single course of conduct—one designed, under the Government's theory of the case, to gain the trust of a child and convince her to meet the defendant in person, so he could lure her into a secluded place for the purpose of engaging in sexual conduct. The telephone conversations would inevitably have been admitted into evidence at D'Amelio's trial, if only to complete the narrative, whether the indictment mentioned them or not. And indeed, defendant did not object to their admission. This cannot be said of any of the four cases discussed above.

The Government also argues that the facts of this case are closer to those in five other Second Circuit cases, where no constructive amendment was found: *United States v. Dupre*, 462 F.3d 131 (2d Cir. 2006); *United States v. Rigas*, 490 F.3d 208 (2d Cir.2007); *United States v. Danielson*, 199 F.3d 666 (2d Cir.1999); *United States v. Patino*, 962 F.2d 263 (2d Cir. 1992) and *United States v. Knuckles*, 581 F.2d 305 (2d Cir.1978).[4] That argument rests on shaky ground.

In *Dupre*, the defendants were charged in an elaborate indictment that contained both a conspiracy to commit wire fraud charge and a substantive wire fraud count. The substantive wire fraud count in the indictment contained a "to wit" clause, which listed a specific wire transfer that was not proven at trial. *See Dupre*, 462

F.3d at 140 & n. 10. The Second Circuit found that there was at most a variance, not a constructive amendment, because the wire fraud that *was* proven fell within the four corners of the broader conspiracy allegation:

> We conclude that the prosecution did not constructively amend Count Two because the evidence at trial concerned the same elaborate scheme to defraud investors as was described in the indictment. The starting and ending dates of the conspiracy noted in the indictment correspond to the conspiracy proven at trial, and the evidence at trial demonstrated that defendants misled investors into believing that defendants would eventually be able to obtain the "frozen funds purportedly belonging to the family of former Filipino president Ferdinand Marcos" described in the indictment.

*Id.* at 141.

In *Rigas*, the defendants were charged with numerous counts of bank fraud and securities fraud as well as an overarching conspiracy. Counts 22 and 23 of the indictment, which charged bank fraud, accused the defendants of "falsely representing that the borrowers on two credit agreements ... were in compliance with certain material terms of those credit agreements." *Rigas*, 490 F.3d at 227. However, "the charging paragraphs for Counts Twenty–Two and Twenty–Three [also] incorporated by reference the allegations contained in paragraphs 1–197 and 204–05," which contained extensive description of the manner and means of the alleged scheme and of the various fraudulent acts by which it was carried out. *See id.*

On appeal from a conviction on all counts, the defendants "contend[ed] that

4. The Government also cites an even more recent Second Circuit opinion, *United States v. Ionia Management S.A.* 555 F.3d 303 (2d Cir.2009), but that case's summary recital of

the contours of the law on constructive amendment adds nothing to the Circuit's jurisprudence on this subject.

the only bank fraud theory properly set forth in the Superseding Indictment was that 'post-closing adjustments' to financial information resulted in bank fraud" and that their convictions were based on a different theory which was pled in another section of the indictment. *Id.* The Second Circuit, however, found that the paragraph cited by the defense was "not the only paragraph in the indictment that addresses bank fraud," that other paragraphs "suggest[ed] that the specific allegations of bank fraud are merely exemplary," and that the charging paragraph referenced another allegation that described the bank fraud conspiracy in general terms. *Id.* at 229. As such, the court found that the totality of the indictment gave the defendants sufficient notice of the core of criminality of which they were accused. *See id.* at 229–30.

Defendant persuasively asserts that *Dupre* and *Rigas* are inapposite, because they stand only for the proposition that no constructive amendment will be found where the alternative factual theory on which the Government relies is described elsewhere in the indictment and/or falls within the four corners of a more generalized conspiracy allegation. In this case, one cannot look elsewhere in the indictment for additional factual allegations that can be read by incorporation into the charge against defendant. The indictment in this case is exactly one paragraph long, and it speaks only of enticing by use of the internet—not the telephone. The crime could not be more specifically (as opposed to generally) charged.

The other three cases on which the Government relies are entirely inapposite.

In *Danielson,* the defendant was charged in a single-count indictment with being a felon in possession of ammunition. *Danielson,* 199 F.3d 666. The indictment alleged that the ammunition at issue consisted of "7 rounds of .45 calibre ammuni-

tion" that had been transported in interstate and/or foreign commerce. *See id.* at 668. Judge Patterson charged the jury that in determining whether Danielson had possessed ammunition that had traveled in interstate commerce, the jury could consider the term "ammunition" as it is defined for purposes of § 922(g): "Any ammunition or cartridge cases, primers, bullets or propellent powder designed for use in any firearm." 18 U.S.C. § 921(a)(17)(A). The defendant argued on appeal that, because the indictment alleged possession of exactly seven rounds, the trial court's charge on "the statutory definition of ammunition, which is framed in the disjunctive to include the component parts of a round, constituted an impermissible broadening of the indictment." *Id.* at 669. The Second Circuit disagreed, holding that where the indictment was narrowed rather than broadened no constructive amendment occurred. *See id.* Here, there can be no suggestion that the indictment was narrowed.

In *Patino,* the indictment charged the defendants with using "a firearm" in connection with a kidnaping scheme "on or about" a certain date. *Patino,* 962 F.2d at 264. Evidence was adduced at trial that, approximately a week after the specified date, the defendants possessed different guns used in connection with the same kidnaping scheme. *Id.* at 265. In finding that a conviction based on these weapons did not constitute a constructive amendment, the Second Circuit noted two things: first, that the indictment did not specify any particular firearm; and second, that under long-standing precedent, the term "on or about" is not a phrase of limitation. *Id.* at 266, *citing United States v. Nersesian,* 824 F.2d 1294, 1323 (2d Cir.1987). Because the term is inherently fuzzy, the indictment properly encompassed the possession of weapons on dates that were

sufficiently close to the charged date to be "about" that date. *See id.*

The instant indictment, in contrast, *did* contain words of limitation: specifically, "to wit: a computer and the Internet." There is nothing fuzzy about "to wit:" it means "that is to say" or "namely."[5] If the indictment in the instant case had used language such as "including but not limited to" or "such as," then it would have been closer to the indictment in *Patino*. It did not.

Finally, in *United States v. Knuckles*, 581 F.2d 305 (2d Cir.1978), defendant— indicted for conspiracy to possess and distribute heroin—argued that the court constructively amended the indictment to allow conviction for conspiracy to possess and distribute cocaine. The fact pattern would seem indistinguishable from *Wozniak* and *Hassan*, yet the Court of Appeals reached a different result. But in *Knuckles*, the *defense*, not the Government, introduced the variance in proof. The Government hewed steadfastly to the allegations set forth in the indictment— i.e., that there was a "heroin processing and packaging operation only in the late summer and early autumn of 1976." The court noted, "the defense, not the prosecution, [ ] introduced the evidence of cocaine during their cross-examination of Government witnesses." *Id.* at 311. It was not surprising, therefore, that the Court of Appeals concluded that "the variance did not affect[ ] the Government's case." *Knuckles* was also a conspiracy case, charging conspiracy to distribute both Schedule I and Schedule 11 drugs (encompassing both heroin and cocaine), so the reasoning of the more recent discussion in

*Dupre* and *Rigas* would be equally applicable to it.

The Government's cases are, in short, very different from this one, and are far from compelling as precedent. The cases cited by defendant, however, compel the conclusion that this particular one paragraph indictment—which charges the crime in narrow and specific terms rather than in broad general ones—was constructively amended by the Government's argument[6] and by the charge. As was true in *Stirone*, the grand jury indicted D'Amelio on a very specific theory—use of a computer and the internet to entice a minor. Had the Government either (1) limited itself to the statutory language, or (2) broadened the unnecessary "to wit" clause to include a reference to the telephone calls, we would not be in this pickle today. But it did not, and the jury was told that it could convict the defendant based on conduct different from the very narrow conduct that was specified in the indictment. That so altered an essential element of the charge that it is not certain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment. *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir.2003). There is simply no way to know whether a grand jury asked to vote on a more generally–worded indictment would have concluded that the telephone calls at issue in this case were sufficiently "enticing" to be *prima facie* criminal.

The Court reaches this conclusion reluctantly. As discussed earlier, this case, which involves a single course of conduct encompassing both internet and telephonic communications, this case is not on "all

5. *See* Webster's Third New Int'l Dictionary Unabridged, http://mwu.eb.com/mwu [accessed May 29, 2009] (2002).

6. I do not say "by the proof" because, as noted above, the telephonic evidence would

have come in regardless of the Court's determination about the scope of the indictment. The Government's opening, and especially its closing argument, however, would have been decidedly different.

fours" with the cases in which constructive amendments were found. And I might well agree with the Government if I were writing on a blank slate. The jury convicted the defendant of "using a facility of interstate commerce" to entice a minor. The internet and the telephone are both facilities of interstate commerce. Whether defendant used one or the other or both (and this jury heard evidence about both), the jury concluded that defendant used *some* facility of interstate commerce to entice his intended victim. That is all that 18 U.S.C. § 2242(b), as drafted by Congress, requires. The defendant had ample notice of the Government's reliance on his telephone calls with "Mary," and his defense addressed them, so he suffered no prejudice at the trial.

However, the Supreme Court and the Second Circuit have spoken, and this Court is their handmaiden. In a case where the indictment was, at the Government's behest, not "generally framed," I have no choice but to follow their lead and confess error.

Accordingly, defendant's conviction must be vacated.

Vacatur does not require a judgment of acquittal. There is ample evidence of enticement in the internet chats. Defendant's motion for a new trial is granted.

The Court will conference the case on June 10 at 10:00, which was the date and time set for sentencing. At that time we will reschedule the trial.