23-6321-cr
*United States v. Rahmankulov*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of September, two thousand twenty-five.

Present:

> EUNICE C. LEE,
> SARAH A. L. MERRIAM,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

       *Appellee,*

    v.                         No. 23-6321-cr

DJONIBEK RAHMANKULOV,

       *Defendant-Appellant.*[*]

---

For Appellee:                        CECILIA VOGEL, Assistant United States Attorney (Nathan Rehn, James Ligtenberg, Assistant United States Attorneys, *on the brief*), *for* Matthew Podolsky, Acting United States

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

Attorney for the Southern District of
New York, New York, NY.

For Defendant-Appellant:     JILLIAN S. HARRINGTON, Law Office
of Jillian S. Harrington, Monroe
Township, NJ.

Appeal from a judgment of conviction entered on March 20, 2023, in the United States District Court for the Southern District of New York (Abrams, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Djonibek Rahmankulov appeals from a judgment of conviction entered after a jury trial at which he was found guilty of conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C § 371; conspiracy to commit money laundering, in violation of 18 U.S.C § 1956(h); and bank fraud, in violation of 18 U.S.C. § 1344(2). On appeal, Rahmankulov argues that (1) the district court's bank fraud instruction at trial constructively amended the indictment, (2) his counsel was ineffective, and (3) the district court erred in its loss calculation. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

Djonibek Rahmankulov's conviction arose from his involvement in a money laundering operation. Together with his co-conspirators, Rahmankulov used fraudulent corporate bank accounts to launder falsely obtained Small Business Administration ("SBA") loans as well as funds acquired through computer hacking and healthcare fraud. In addition, Rahmankulov and his co-conspirators operated an unlicensed business that, for a fee, transferred funds between the United States, Uzbekistan, and Iran using illegitimate shell companies. In support of these endeavors,

2

Rahmankulov repeatedly made fraudulent statements to banks in order to open accounts for his shell companies.

"[T]o sustain a conviction for bank fraud, the Government must prove a 'scheme or artifice' to (1) defraud a financial institution, or (2) obtain money or property under the 'custody or control' of a financial institution 'by means of false or fraudulent pretenses, representations, or promises.'" *United States v. Hild*, 147 F.4th 103, 110 (2d Cir. 2025) (quoting 8 U.S.C. § 1344). In this case, the indictment charged Rahmankulov with "knowingly execut[ing] and attempt[ing] to execute a scheme and artifice to obtain moneys . . . and other property . . . under the custody and control of, a financial institution . . . by means of false and fraudulent pretenses, representations, and promises" that he knowingly made to deceive the financial institution so that he might obtain its money or property. App'x at 32–33.

Before trial, the government submitted a request to charge the jury that, with regard to the existence of a scheme, that element could be met with either proof of "a scheme to defraud a bank" *or* proof of "a scheme to obtain property under the custody or control of a bank . . . by means of fraudulent pretenses, representations, or promises." App'x at 77. Rahmankulov asked for the same instruction. At trial, the district court gave a jury instruction that contained essentially the same language that the parties requested, and Rahmankulov did not object.

In its summation, the defense argued that the government acted unethically by purportedly suborning perjury from its cooperating witnesses, among other alleged misconduct. The government did not object. After the defense summation, the district court, *sua sponte* and without the jury present, criticized defense counsel for making baseless personal attacks on the prosecutors. *See* Trial Tr. at 1211, *United States v. Rasulov*, No. 20-CR-653 (S.D.N.Y. Oct. 7,

3

2022), Dkt. 207. The parties consented to a curative instruction, which the district court gave before the government's rebuttal, clarifying that the jurors should focus solely on determining "whether, on the evidence or lack of evidence, the defendant's guilt [had] been proven beyond a reasonable doubt." *Id.* at 1216. At the close of trial, the jury convicted Rahmankulov on all three counts.

In its pre-sentence report ("PSR"), the Probation Department calculated that Rahmankulov personally laundered at least $4,882,298 through the bank accounts of the shell companies he controlled, and that, conservatively, his co-conspirators Artur Sattarov and Fariddun Kuliev together laundered at least $9,671,381 as a part of their joint money laundering operation. The PSR further noted that Rahmankulov was responsible for over $3,000,000 in fraudulent wire transfers from at least seven victims of computer hacking. The report also noted that Rahmankulov's companies submitted more than $8,500,000 in fraudulent Medicare and Medicaid claims. In total, the PSR estimated that Rahmankulov was responsible for more than $17,500,000 in intended foreseeable losses through these conspiracies.

Based on this information, the Probation Department calculated a United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") total offense level of 37 and a criminal history category of I, resulting in a Guidelines range of 210 to 262 months of imprisonment. Based on the finding that Rahmankulov was responsible for a total intended loss of more than $9,500,000 but less than $25,000,000, the offense level was increased by twenty under U.S.S.G. § 2B1.1(b)(1)(K). At sentencing, Rahmankulov objected to the loss amount calculation on the basis that he should not be held responsible for losses caused by his co-conspirators. The district court

4

overruled Rahmankulov's objection and imposed a below-Guidelines sentence of 121 months' imprisonment followed by three years of supervised release.

## DISCUSSION

### I.     The Bank Fraud Instruction

Rahmankulov argues that the district court's jury instruction regarding bank fraud constructively amended the indictment because, while the indictment did not state which statutory subsection of the bank fraud section he was charged under, the factual allegations in the indictment only tracked subsection 2 of 18 U.S.C. § 1344, which pertains to obtaining property under the custody or control of a financial institution.   Therefore, Rahmankulov contends that the charged instruction amended the indictment to permit the jury to convict Rahmankulov of bank fraud under subsection 1, which pertains to defrauding a financial institution, a crime for which he alleges he was not charged.   Rahmankulov concedes that he did not object to the jury instruction, and therefore plain error review applies.

To show plain error, a defendant must establish that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Moore*, 975 F.3d 84, 90 (2d Cir. 2020).   Rahmankulov contends that: the jury was instructed "regarding an offense with which the grand jury was not presented"; constructive amendments are *per se* prejudicial under *United States v. Bastian*, 770 F.3d 212, 220 n.4 (2d Cir. 2014); and a conviction for "an offense for which he was not indicted" is an egregious example of unfairness.   Appellant's Br. at 29–30.   We disagree.

5

"A constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted." *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021) (internal quotation marks omitted). Jury instructions may constructively amend an indictment where they "so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Danielson*, 199 F.3d 666, 670 (2d Cir. 1999) (internal quotation marks omitted). Thus, "[t]he critical determination is whether the allegations" in the indictment and in the jury instructions "substantially correspond." *Id.* Put another way, an indictment has not been constructively amended where the allegations in the indictment and the jury instructions both relate to a "single set of discrete facts" or form "part of a single course of conduct" with the same "ultimate purpose." *United States v. D'Amelio*, 683 F.3d 412, 419–21 (2d Cir. 2012).

Here, there was no constructive amendment because "the charge upon which [Rahmankulov] [wa]s tried [did not] differ[] significantly, [if at all], from the charge upon which the grand jury voted." *Khalupsky*, 5 F.4th at 293. The indictment charged Rahmankulov with "knowingly ma[king], and aid[ing] and abett[ing] the making of, material misrepresentations to a . . . financial institution and others in order to deceive that financial institution into allowing companies operated by Rahmankulov to operate and process financial transactions through the institution." App'x at 32. While it is true that, as Rahmankulov argues, the two subsections of the bank fraud statute define two separate crimes, *see Loughrin v. United States*, 573 U.S. 351, 359–60 (2014), in this case, the language in the indictment subsumed both of those crimes, even if it did not use the exact language of subsection 1. The indictment charged Rahmankulov with,

6

in relevant part, "knowingly execut[ing] and attempt[ing] to execute a scheme . . . by means of false and fraudulent pretenses, representations, and promises" in order to "deceive that financial institution." App'x at 32. While that language more closely tracks the language of subsection 2, its meaning also subsumes that of subsection 1. In other words, the relevant count of the indictment charged Rahmankulov with committing a scheme to defraud a financial institution, if not in those exact words. *See* 18 U.S.C. § 1344(1). Because the allegations in the indictment and the jury instructions both relate to a "single set of discrete facts" and form "part of a single course of conduct" with the same "ultimate purpose," *D'Amelio*, 683 F.3d at 419, 421, the instruction was not erroneous. Moreover, even if the jury instruction was erroneous, the evidence presented at trial was plainly sufficient to convict Rahmankulov of bank fraud under 18 U.S.C. § 1344(2), which renders any error harmless. *See United States v. Atilla*, 966 F.3d 118, 126–27 (2d Cir. 2020) (holding instructional error harmless where there was "little doubt that the jury necessarily found [the defendant] guilty on a different, properly instructed theory of liability").

## II.     Ineffective Assistance of Counsel

Rahmankulov argues that he was denied his right to effective assistance of counsel as a result of his trial attorney's (1) personal attacks on the prosecutors during his summation and (2) failure to object to the district court's final instruction on the bank fraud count as overbroad. To prevail on a claim of ineffective assistance of counsel, a defendant must: (1) demonstrate that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice" from the alleged dereliction. *Strickland v. Washington*, 466 U.S. 668, 687–88, 693–94 (1984). When faced with an ineffective assistance claim, courts "must indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). To demonstrate prejudice under the second prong of the analysis, a defendant must show a "substantial, not just conceivable" "likelihood of a different result." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Rahmankulov has not done so here.

First, Rahmankulov argues that he was denied his right to effective assistance of counsel because his trial counsel's conduct in accusing the prosecutors of lying, acting unethically, and suborning perjury, fell below an objective standard of reasonableness, and prejudiced him. But these comments, even if ill-advised, were seemingly part of a legitimate trial strategy—namely, to attack the credibility of the government and its witnesses. *See Carew v. Morton*, __ F.4th __, No. 23-7934, 2025 WL 2325907, at *11 (2d Cir. Aug. 13, 2025) (holding that assistance was not ineffective where the court could not "conclude that [the attorney] lacked strategic reasons for proceeding as he did"). Further, a review of defense counsel's entire summation reveals that he made several other arguments attacking the witnesses' credibility—addressing the witnesses' personal biases against Rahmankulov, their incentives to lie, and examples of their past untrustworthiness. *See, e.g.*, App'x at 38–43, 46–48, 57, 64–66. In addition, defense counsel argued that it was the government's burden to prove Rahmankulov's guilt, and that the government had not adduced sufficient corroborating evidence to do so. *Id.* at 38, 54. These arguments were reasonable under the circumstances, and thus, we cannot conclude that defense counsel was ineffective based on closing arguments alone.

Turning to defense counsel's failure to object to the jury instructions, because Rahmankulov's constructive amendment claim is not meritorious, as explained above, the failure to object to the instruction does not constitute ineffective assistance. *See United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008) ("[F]ailure to make a meritless argument does not amount to ineffective assistance." (internal quotation marks omitted)). As a result, this argument fails as well.

In any event, even if defense counsel's performance did fall "below an objective standard of reasonableness," Rahmankulov fails to "affirmatively prove prejudice," *Strickland*, 466 U.S. at 687–88, 693, because there was overwhelming evidence to support the jury's finding. *See, e.g.*, *United States v. Guang*, 511 F.3d 110, 120 (2d Cir. 2007) (rejecting ineffective assistance claim because defendant failed to show prejudice where the evidence was overwhelming).

## III. Loss Calculation

Rahmankulov argues that his loss calculation under the Sentencing Guidelines improperly attributed to him an intended loss amount that included losses caused by his co-conspirators. The amount of loss attributable to a defendant at sentencing includes losses resulting from all relevant conduct, including "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and, "in the case of a jointly undertaken criminal activity," all reasonably foreseeable "acts and omissions of others" in furtherance of the jointly undertaken criminal activity "that occurred during the commission of the offense of conviction [or] in preparation for that offense." U.S.S.G. § 1B1.3(a)(1)(A)–(B). The commentary further clarifies that the scope of the criminal activity for which a defendant can be held responsible for purposes of the Sentencing Guidelines is "limited by the scope of [the

9

defendant's] agreement to jointly undertake the particular criminal activity." *Id*. at cmt. n.3(B). Thus, district courts must make particularized findings as to the scope of the defendant's agreement to criminal activity and whether the acts of one's co-conspirators in furtherance of that agreement were reasonably foreseeable. *See United States v. Studley*, 47 F.3d 569, 574–75 (2d Cir. 1995). To define the scope of the agreed-upon activity, "[t]he relevant inquiry is what role the defendant agreed to play in the operation, either by an explicit agreement or implicitly by his conduct." *Id*. at 575. The Guidelines in effect at the time of Rahmankulov's sentencing defined "loss" as "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). The definition of "loss" in the Sentencing Guidelines commentary is "authoritative" because it is "neither inconsistent with nor a plainly erroneous reading of the guideline." *United States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024) (internal quotation marks omitted).

Rahmankulov argues that this Court should not defer to the Guidelines commentary definitions of "loss" and "intended loss" because in *Kisor v. Wilkie*, 588 U.S. 558, 573 (2019), "the Supreme Court ruled that the Guidelines commentaries may be deferred to only if, after exhausting all tools of statutory interpretation, a Guideline remains 'genuinely ambiguous'," and here the term "actual loss" unambiguously means "actual loss." Appellant's Br. at 59–60 (internal quotation marks omitted). While Rahmankulov acknowledges that this Court rejected the exact argument he is making in *Rainford*, 110 F.4th at 475 n.5, where we held that the term "loss" as used in the § 2B1.1(b)(1) commentary included "intended loss," he argues that we should revisit the *Rainford* holding to align with sister circuits who have held that *Kisor* applies to Guidelines commentary. *See, e.g.*, *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) (*en banc*); *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022); *United States v. Riccardi*, 989 F.3d 476 (6th Cir. 2021). We cannot

do so; this panel is bound by *Rainford*, which we reaffirmed in *United States v. Zheng*, 113 F.4th 280, 299 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1899 (2025). *See United States v. Peguero*, 34 F.4th 143, 158 (2d Cir. 2022) ("[A] panel of our Court is 'bound by the decisions of prior panels until such times as they are overruled either by an en banc panel of our Court or by the Supreme Court.'" (quoting *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004))).

Rahmankulov further argues that he should not have been responsible for funds laundered by his co-conspirators Kuliev and Sattarov because their conduct was not within the scope of or in furtherance of jointly undertaken activity as there is no proof of an agreement between them, no evidence the funds were pooled, and no proof of what role he agreed to take in the scheme. We disagree.

The district court made particular findings as to the scope of the criminal activity that Rahmankulov and his co-conspirators undertook, noting during the sentencing that their actions were part of an ongoing scheme to launder proceeds generated through fraudulent billing. Indeed, the evidence presented at trial demonstrated that Sattarov and Rahmankulov wired funds to the same Chinese company, Rahmankulov and Kuliev deposited their fraud proceeds in the same business account, and Rahmankulov and Kuliev had the same false information on the memo line of their checks. While there was no evidence of an explicit agreement between them, the evidence supported that Rahmankulov, Sattarov, and Kuliev implicitly coordinated given that they laundered funds for the same pharmacies at the same time, using the same method, and sent the same proceeds to the same destinations, as the district court found. *See Studley*, 47 F.3d at 575.

Moreover, the district court stated that "based on the facts before [it], [it] would have imposed this same sentence even if [it] had ruled differently on the guidelines calculations."

Sentencing Tr., at 38–39, *United States v. Rasulov*, No. 20-CR-653 (S.D.N.Y. Mar. 28, 2023), Dkt. 237. Thus, even if there was an error in calculating the loss amount, the error was harmless. *See United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) ("Where we identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless." (internal quotation marks omitted)); *United States v. Kent*, 821 F.3d 362, 367–68 (2d Cir. 2016).

For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court